### STARNES v. ROUMAIN.
### No. 1404.

Court of Appeal of Louisiana. First Circuit.

Dec. 4, 1934.

W. A. Benton, of Baton Rouge, for appellant.

Johnson & Kantrow, of Baton Rouge, for appellee.

LE BLANC, Judge.

On February 6, 1925, Ben Roumain executed a series of six promissory notes, each being for the sum of $500, and at the same time granted a mortgage on certain lots of ground situated in what is known as Fuqua and Lamon town in the parish of East Baton Rouge, in order to secure payment of the same. Four of these notes were, in due course, acquired by Mrs. Byrne Starnes, and in March, 1933, they being all yet unpaid, she obtained an order of executory process under which the property mortgaged was seized and sold, and at the sale adjudicated to her for the court costs incurred in the foreclosure.

After the sale of the property, she instituted the proceeding with which we are presently concerned, by rule, in which she alleges that she purchased the four notes on which she had foreclosed the property from the Citizens' Bank & Trust Company, which was the holder and owner of the entire series, paying the sum of $2,000 for the four notes which she had acquired. She alleges further that, as the said bank had been the holder and owner of all the notes, it could not compete with her in the proceeds of sale, if any there had been to be distributed, nor in the ownership of the property. She accordingly prays that Jesse Johnson, special agent of the Citizens' Bank & Trust Company, now in liquidation, and the clerk of court and recorder of mortgages of the parish of East Baton Rouge, be ruled into court to show cause why the special mortgage granted by Ben Roumain on February 6, 1925, to secure the payment of all six notes, should not be canceled and erased in full.

The legal proposition submitted in plaintiff's rule is not disputed by the special agent for the bank, as indeed it could hardly be contested, in view of the recognition under the jurisprudence of this state of the rule to the effect that the holder of a series of mortgage notes cannot transfer some of them and receive payment of the price and then compete with the transferee in the distribu-

tion of the proceeds of the sale of the mort-gaged property. See Leonard v. Brooks, 158 La. 1032, 105 So. 54; Butler v. Clarke, 44 La. Ann. 148, 10 So. 499. The sole defense relied on by the special agent for the bank is that the bank did not own the four notes acquired by plaintiff, Mrs. Starnes, a defense which presents purely a question of fact. The lower court dismissed the rule at plaintiff's costs, and she has appealed.

Mr. Edward E. Starnes, plaintiff's husband, testifies that he purchased the four notes, as agent for his wife, from the Citizens' Bank & Trust Company, giving in payment therefor a check which he drew on a special account in his name which he carried in that bank. He says that he gave the check to Mr. C. M. Downs, who was then president of the bank, and with whom he dealt in this transaction. He is not positive as to the time, but fixes it between the months of June and September, 1930. He refers to the amount of the check being $2,000 "or thereabouts," but is unable to locate it now, as it has no doubt been destroyed by him. He says that he "understood" that he was buying the notes from the bank, as he wanted to be safe in investing the money for his wife, and felt that, if the bank owned the notes, they must have been considered a good investment. The testimony of Mr. Starnes, taken by deposition, constitutes the entire evidence submitted by plaintiff in rule in the case.

Mr. Jess Johnson, special agent for the Citizens' Bank & Trust Company, in liquidation, testifies that he was attorney for the bank before it closed, and states that it (the bank) "did not and never has owned the notes which were foreclosed on by the plaintiff in this case." On cross-examination he says that he only knows by hearsay who sold the notes to Mrs. Starnes, but "knows that the Citizens' Bank did not sell them to her."

Mr. Albert Ligon, who was vice president of the bank and an active officer in its management, testifies that the bank did not own any other notes of the Ben Roumain series than the one it now holds.

This being all the testimony in the record, we do not see how we can very well reverse the judgment below on a question of fact.

Counsel for plaintiff in rule has based his argument mainly on the failure of the defendant to have called Mr. Downs as a witness, but, as far as the record discloses, Mr. Downs is no longer the president of, nor is he connected with, the bank, and he seems to have been equally available as a witness to the plaintiff as well as to the defendant. In view of the fact that her husband had mislaid or destroyed the check which he says he delivered to Downs in payment of the notes, it would seem that he was more important as a witness to her side than to that of the special agent of the bank, who, after all, was the defendant in rule and had his own testimony as well as that of Mr. Ligon on which to rely.

The rule, in our opinion, was properly dismissed by the lower court, and the judgment appealed from is therefore affirmed.